We appreciate your attendance and glad you could join us and hope you learned something from observing how courts of appeal your cases. Mr. Zanore. Thank you, your honor. May it please the court, counsel Adam Zener on behalf of the court. You can raise the podium with the button to your right there on the podium. It can go up and get the mic a little closer to you and we can hear you a little better. Thank you, your honor. May it please the court, Adam Zener on behalf of Jaime Campos. Mr. Campos appeals the district court's finding that he is a career offender. Counsel, I think you still need to speak up just a little bit better for the aging among us. All right. Mr. Campos appeals the district court's finding that he was a career offender and so he appeals his sentence of 240 months. Specifically, your honors, he appeals the finding that the Texas statute of conviction that Honorable Judge Gritzner found was a predicate for that 4B1.2 enhancement is sweeps and is overbroad relative to 4B1.2. That Texas statute of conviction is important. This court has it, 481.112, and that statute includes an offer to sell, including paraphernalia, and this court has not reviewed this Texas statute. The Fifth Circuit has in a case called Hinkle. That case was provided to the district court in opposition. The government provided the district court ACCA cases, which we submit are not instructive relative to the analysis here. Here, now, what we have is the government not providing any specific case on point other than Hinkle. It offers no suggestion why Hinkle should not control. It does submit, albeit implicitly, that the Fifth Circuit really has a different analysis than our circuit relative to the breadth of 4B1.2. It does not. The Fifth Circuit in Lighthorn makes very clear that it too looks to and can look to the commentary, but that is only where the breadth of the underlying statute is within 4B1.2. Would you agree that if the commentary were to apply, and I am just stating that as a possibility, if the commentary were to apply, would that not bring this within the guideline? Mr. Campos submits no, and there is a very simple reason for that. One, the government here has not alleged ambiguity with respect to 4B1.2. Not alleged it. We can speculate as to why. The court has and has seen Kaiser v. Wilkie, which would, if ambiguity applies, would then require this court to conduct a Kaiser analysis relative to whether the commentary could apply. Secondly, no, the attempt within that commentary note cannot apply because that commentary note can only inform as to the elements within 4B1.2. That is, the commentary can only inform that which is above the line, and that which is above the line is exactly what Hinkle reviewed, and this is exactly why the state statute, the Texas state statute, which includes and is very broad, offer to sell, that sweeps on its face significantly broader than those 4B1.2 elements. If the court were to reverse on this issue, how would that impact the sentencing of Mr. Campos? Well, we would remand for resentencing. Mr. Campos would not be a career offender, and it would significantly impact, and I think we lay this out, Chief Judge Smith, in our brief, how it would significantly impact the sentence that Honorable Judge Gritzner might be able to provide. As the court knows, an enhancement as a career offender. Have you calculated how it would adjust the range that would be considered? Yes, and we, unfortunately, we have calculated that and we've laid that out in our brief. What we do say in our brief, though, is because Judge Gritzner, Honorable Judge Gritzner, found that Mr. Campos was a career offender, it obviated any of the other enhancements that might apply, so we just don't have a finding on that. What we do know is even if our arguments with respect to why those various enhancements don't apply, Mr. Campos would receive a significantly lower sentence by year. We are talking years. Thank you, Your Honor. Counsel, help me out here. The Fifth Circuit, do they view the commentary like the Eighth Circuit? Do they include attempts for purposes of 4B1.2? What the Fifth Circuit does in Lighthorn is it does acknowledge it can go look to the commentary, but again, only where that commentary is instructive relative to the elements of 4B1.2. So they don't go, our Mendoza case that you've cited in your briefing, that's not their position? Is that what you're saying? Well, I think there's a couple distinctions between Mendoza-Figueroa and what Hinkle does in the Fifth Circuit and what the Fifth Circuit had done previously. Mendoza-Figueroa, as this Court appreciates, is then Chief Judge Loken's case. What Chief Judge Loken says in Mendoza-Figueroa is the commentary under Note 1 adds to the above-the-line text. This Court has not revisited Mendoza-Figueroa. This Court's affirmed Mendoza-Figueroa procedurally, but it has not revisited Mendoza-Figueroa with respect to now that Kaiser is the law of the land. This Court need not go and revisit Mendoza-Figueroa, though it can and perhaps should at least conduct that analysis whether under Kaiser Mendoza-Figueroa is still good law, but Mendoza-Figueroa is a conspiracy case. And as this Court knows, the distinction between whether the application note for conspiracy versus the application note with respect to Mendoza-Figueroa is a matter for future analysis. Just to follow up on that, as I understand the government's position as they are arguing this is an attempted transfer, attempted delivery, what significance should we take from what I understand in Texas law? They have an attempt. In other words, there is a separate attempt. A prosecutor can charge an attempted offer to sell, an attempted transfer, delivery. How does that affect our analysis here? Thank you, Judge Kelley. It does and it absolutely should. The fact that this is what Mr. Campos was convicted of under 481.112, that is a substantive offense. And so that Texas has a different statute that criminalizes attempt, that is the end of the analysis as we would submit it. There cannot be the predicate using, trying to qualify this criminal statute as an attempt is an improper analysis, both by what the Texas legislature has said, given that we have these two different statutes. That's number one. Number two, what the courts in Texas have said, and we cite these to the court, Stewart, Vilvano, and Molle, the fact that in Texas the broad scope of this statute on offer to sell, all that is required is the mere words and the intent to say those words. This is a substantive offense. For that reason, it cannot, cannot fall within the predicate language of 4B1.2. Mr. Zinner, you've just about exhausted your time. You can reserve a little bit for rebuttal if you'd like. Thank you, Your Honor. Ms. Jensen. Good morning, Your Honors, and may it please the court. I'm pleased to be here today representing Ms. Stamps, who, as you all know, of course, is challenging two separate two-point enhancements under the guidelines, which cumulatively increased her sentencing guideline range more than ten years, from 235 months at the bottom of the range to 360 months, as calculated by the Honorable Judge Gritzner. Ms. Stamps argues that remand is required for several reasons in this case, which, of course, are outlined in my brief. But first and foremost, she argues that even accepting that the confidential source accurately relayed that person's observations about statements Ms. Stamps made, that the confidential source perceived as being threats against the officer, even if the confidential source accurately relayed all of that information, the facts of Ms. Stamps' conduct still do not satisfy the plain language of 2D1.1b2 or 2D1.1b16d. Ms. Jensen, I have a question about how the district court resolved the objection. Sort of a little unusual, there was the reports that the government presented, which were the officer's report of the confidential source's statements. There was an objection, and there was no evidence presented at the sentencing hearing in an attempt to resolve that. Can you help me understand sort of the district court's approach toward resolving that objection? What I perceive to be a factual objection to what happened, even though you're sort of starting your argument with assuming it's factually accurate. Can you help me out on that part of it? Yes, Your Honor. I think if you review the record really carefully, Ms. Stamps didn't exactly contest that the confidential source relayed this information accurately. She did essentially she gave a different version of events. The source heard this information, but I was really trying to do something different. Now, of course, she only did that by way of objection, and there was no evidence presented during the course of the sentencing. Both parties relied on their briefs, and of course the government carried the burden to prove by preponderance of the evidence. The second, which it relied on, that Ms. Stamps made a So I don't want to take too much of your time. So basically I should just be accepting sort of the record as it is and let you spring off onto your argument as a legal matter under the guidelines. Well, yes and no, Your Honor. I do think it's important still to consider the reliability of the confidential source's information. And in particular, I think there's a little bit of nuance here that we need to pay attention to, which is I think we can accept that the paperwork and she did these things. But that doesn't mean that we have to go that extra step. That doesn't mean we have to accept the fact that the confidential source accurately perceived those statements to be an attempt to murder someone, that the confidential source didn't have some other motivation to perhaps exacerbate the way that these statements looked. What do the statements mean? That, Your Honor, is still very much in debate, and that I think is the more specific point that Ms. Stamps had an objection to as opposed to the content of the relayed statements themselves. Counsel, I have a question regarding Section 2D1.1B16 that you referenced a little bit ago. How do you account for the fact that in Section 3C1.1, that enhancement expressly applies to attempts to obstruct justice and 2D1.1B16 does not? Your Honor, that is an excellent point. I think the important concern on this record is that the government did not assert 3C1.1 as a basis for the two-point enhancement. They, in fact, asserted 2D1.1B16D, and that was the only issue that was squarely before the district court. Of course, 2D1.1B16D does not, by its plain language, cover attempts. Certainly, Your Honor, has raised a valid issue, which is that because 3C1.1 does cover attempts, the district court arguably could make a two-point enhancement under 3C1.1 should the government assert it, and, of course, that would be an appropriate matter for remand for the district court to make in the first situation. So if we were to remand on that basis, the court could just simply move the enhancement to a different section? It theoretically could, yes, because 3C1.1, this court has held in Wallstrom and other cases, does cover attempt, and by its express language it does, whereas B16D does not. I'm not certain why the sentencing guidelines have distinguished those two things that way. However, when we have what the district court did here, it affirmed application of a two-point enhancement under B16D, not under 3C1.1. So what relief are you seeking? Excuse me, Your Honor? What relief are you seeking on this issue? We would like the case to be remanded. We would like the court, of course, to say that based on the plain language of the sentencing guideline provisions that the district court made an error in applying both based on the plain language. What happens from there, I think, is a question for the district court to determine on remand. In relationship to the 2D1.1 B2 enhancement, I do think that a finding by this court could be conclusive. I think actually Ms. Stamps' conduct simply cannot satisfy 2D1.1 B2. She did not use violence. We know that. There's at least an argument to be made that she directed the use of violence, but of course our assertion there is that she did not direct the use of violence. She attempted to direct the use of violence. But more importantly, the district court only considered and the government only asserted that second clause of 2D1.1 B2. Is there any reason in the record to indicate why the persons to whom she allegedly communicated were not, statements were not included in the record from them verifying these attempted manipulations? There is no explanation for that in the record. And I think that was a failure of the government in carrying its burden to prove by a preponderance of the evidence that these sentencing provisions apply. When Ms. Stamps made the challenge to the provisions, the government carried its burden of proof. It came forward only with a reiteration of what someone said. So when we come down, of course hearsay can be admitted at the sentencing hearing. We don't challenge that fact. But we do have the fundamental question of the reliability and the credibility in this case. Because we don't have any of the witnesses. We don't even have the officer that filled out these reports testifying about the demeanor of the confidential source and the statements that that person made. So our position of course would be that on this record, the judge simply could not make an appropriate finding that the confidential source was sufficiently reliable that that hearsay information in any form of these exhibits should have been allowed at all. I have a follow up question on the remand issue. And I guess in a couple of ways. First as to the 3C enhancement for obstruction. Is your position that they could revisit that even though it wasn't raised? So your position is that the 3C obstruction enhancement was not proposed by probation or the government? Is that correct? I believe that's correct. They always at all times relied on 2D1.1.2. But you think that if this case were to be remanded that that would be open again for another trial and a different way to get at an obstruction enhancement? My position, Your Honor, would be that it should not be open. But that of course would depend on the decision by this Court. Were the Court to remand the case on a closed record, which we of course would ask for, then I do think that the government would be prohibited from raising the 3C1.1 as an alternative basis to apply the two-point obstruction enhancement. Although the District Court certainly could consider that an invariance. But again, we come back to the question of these are matters that the District Court should decide for itself in the first place before this appellate panel weighs in on it. Both of these enhancements as decided by the District Court unfortunately simply do not qualify under the plain language. No matter how we view Ms. Stamps' conduct, no matter how much weight we give to the confidential source's information and credibility. I think the District Court simply overstepped a bit by allowing this in. And on top of that, I think it's important to look at the extremely limited record that the District Court made. It did acknowledge the double-counting argument, but Judge Grissner did not comment on any of the reliability or credibility findings which were in fact challenged. He didn't actually specifically comment beyond saying that he found that this threat was easily proved. And he did not comment on any issue relating to the credibility of the threat, nor did he comment on the use of violence factor. With that, Your Honors, I would reserve a bit of my remaining time for rebuttal. Thank you, Ms. Jansen. Ms. Tubbs? Good morning. May it please the Court, Mackenzie Tubbs on behalf of the United States. I'd like to start with Ms. Stamps' argument. As she acknowledged today, her factual objections were limited. She did not object to the facts of what the confidential informant said, and she did contest the credibility. Yet the District Court still concluded that based on the record in front of it, the two reports of two separate interviews from that inmate, as well as a review of Ms. Stamps' jail calls, that that was sufficient to find that she both made credible threats of violence and engaged in the threat enhancement pursuant to her aggravated role. I'd like to return... So what was the District Court's analysis in your view? Sort of what did the District Court credit, and why did it credit that evidence? Thank you, Your Honor. I believe that the District Court credited the fact that Ms. Stamps had provided two interviews to two separate officers. Pardon me, that the inmate had provided two interviews to two separate officers, and that the first interview was an interview that was done at the inmate's request. And that inmate directly contacted the very undercover officer to whom Ms. Stamps issued these threats. And these are facts that were presented within the PSR, and which the District Court did adopt in making the conclusion that these enhancements applied. I would like to turn... Would you address the absence of the connecting witness as to who's the connecting witness? As to who these directions were made to obtain the obstructing conduct? Yes, Your Honor. As all parties acknowledge, hearsay here is admissible, and the type of hearsay that we were dealing with here was corroborated hearsay. As I was saying, there were two interviews where this inmate provided essentially the same thing. I understand that that doesn't mean it should always be the government's approach to proving facts in a case, particularly when much of the initiation of this is coming from someone who may have a motive as an inmate in a jail with criminal prosecution on themselves. And that issue was squarely considered by the District Court, this witness's credibility. There were sealed documents about this witness's criminal history that were admitted at sentencing. Defendant made arguments about why that could motivate this witness's intent to provide this story and receive some sort of perceived benefit. The witness did not receive a benefit, and the District Court squarely considered those reasons in evaluating the hearsay evidence here. It also had Ms. Stamps's jail calls specifically tied to the information that Ms. Stamps had provided this inmate witness. Those individuals were able to contact and find out information about other people. That was Ms. Stamps's goal here, was to find out information about the undercover officer and to get rid of the problem. And then in Ms. Stamps's more explicit conversations with that inmate witness, she discussed there can't be a case if there is no witness. So counsel, why not just put on the officer? I can understand maybe some reasons why you wouldn't put on or couldn't put on the confidential source. But this is double hearsay, one step back. Why not just put on the officer and ask the officer questions about his perceptions of her credibility and why he believed what she was saying was actually the truth. Your Honor, here I believe that as Ms. Stamps has acknowledged here today, that she was not challenging the facts of what that individual said. And here the credibility was, the evidence of our credibility was the availability of those additional jail calls and the corroboration of the two additional statements. I do want to address specifically the possibility of a 3C enhancement here. The application notes, specifically application note 7 to 3C states that if an enhancement under 2D1.1B16 applies, that an enhancement under 3C1.1 should not. And if this Court for some reason were to find that that explicit attempt language is necessary in order to conclude that Ms. Stamps' very explicit threats rise to that level, on remand it certainly is the government's position that that 3C1.1 would apply and that it would be harmless error because the District Court already applied the two level enhancement under 2D1.1B16. Why should the government get another chance? It seems like you could have said one or the other. Or you could have started with 3C. I'm curious as to your position as to why you think you get another try at it if in fact this were to be remanded. First Your Honor, I would like to make clear it is the government's position that Ms. Stamps' conduct rises to the level of B16D. She did engage in witness intimidation. Her conduct did rise to that level of otherwise obstructing justice. I wanted to ask you about that counsel. Was it possible to not succeed? It is, Your Honor, it is. I do believe that the case law that does apply to the B2 enhancements is instructive here. Admittedly the case law relating to B16D is relatively limited. The government's best case on the 16B is the Tang Yuk case. In the Tang Yuk case, the second circuit there considered a phone call very similar to the language used in Ms. Stamps' case. Driving a car over a witness. That is very similar to Ms. Stamps' statements here. She wanted to get rid of the problem. If there was no witness, there was no case. The second circuit applied both enhancements in their case as was here. They specifically said that even if the statements in question could be interpreted as innocent hyperbole, the enhancement still applies. This isn't the true threats analysis that sometimes we easily jump to when we think of threats. This is whether there was that witness intimidation, tampering, or otherwise obstructing justice by a preponderance of the evidence. What's the difference between an attempt and actually obstructing? Your Honor, I believe that that is certainly a matter of degree, but it's clear that here Ms. Stamps' conduct did rise to that to intimidate the witness. She attempted to mail that paperwork. She gave it to someone. I'm trying to get that line. If it is creation, when does an attempt stop and obstruction start when it was not a successful effort? Your Honor, I believe that the guidelines here adding, requiring that someone successfully engage in witness intimidation cannot be what the guidelines mean here. That someone successfully did tamper with or destroy evidence can't be what the guidelines mean. The Peterson case out of the Sixth Circuit, an unpublished decision, was about a Facebook comment. In their analysis of that Facebook comment, they discussed about context being king. How someone relays that information. Here, it's Ms. Stamps' actions. She actually approached someone. She gave them paperwork that was then and the undercover officer's name was circled. She explained her plan. That is witness intimidation. Or at least an attempt. The witness was an undercover officer. I doubt there was a lot of true intimidation, but it certainly would seem to satisfy a major step towards achieving Yes, and it is that. It certainly is a substantial step. I do think it's difficult to discuss this because it didn't follow through, but I don't think that that's what the guidelines require. The guidelines don't require that a defendant truly place in fear an undercover officer, a prosecutor, a judge. The guidelines here require that witness intimidation and Ms. Stamps did everything she needed to assure. You don't think 2D 1.1B requires more than a simple attempt? Your Honor, I don't believe that the word attempt is not expressly used. I do think that the case law that we have available demonstrates what we think of as an attempt as being sufficient. Is there a case that says that that particular guideline includes attempt? There is not, Your Honor. And I do believe, I return to, I think the government's best case on this particular issue is the Tang Yook case out of the 7th Circuit where the witness discusses nearly driving a car over someone. This is that same sort of conduct in the government's perspective, from the government's perspective. Counsel, will you also be addressing the Campos case? I will, Your Honor. I'd like to ask a question about that. It seems like from my perspective, this Court's placed in a dilemma of following the 5th Circuit's approach or the reasoning of the 8th Circuit. Could you tell us whether we are bound by 8th Circuit precedent or whether it's really an open issue? Your Honor, I believe that you are bound by the 8th Circuit precedent and that the 8th Circuit precedent favors the District Court's decision here that this is a predicate offense. When Mr. Campos came to Iowa, he brought two things. He brought drugs and he brought his drug convictions. And he did not bring Hinkle with him. And that is important. What about the breadth of the Texas statute that includes an inchoate offense that's not part of the guidelines? The government's best case on this, Your Honor, of course is Ochoa Salgada. And we have discussed that case in our brief. There are several reasons why the reasoning of Ochoa Salgada is much more persuasive with the prior decisions in the 8th Circuit. Was that an analogous theory of the law? It was considering a controlled substance offense under the immigration context. And I believe that it was analogous because in reaching that conclusion, the 5th Circuit did several things that Hinkle did not. The 5th Circuit in that case considered the attempt language in the application note, much like this Court in its binding precedent has done. And then it analyzed the breadth of the Texas case law. And first, I will point out that in Hinkle the government specifically conceded that offer to sell did not fall within the definition of the controlled substance offense guideline. Ochoa Salgada instead in looking at this issue anew without the concession, which of course as this Court knows does not create that binding precedent, and Ochoa Salgada itself specifically analyzes Ochoa Salgada looked at that breadth of Texas case law and concluded that an offer to sell meets that mens rea requirement. And it's the exact mens rea requirement that this Court has discussed in Thomas in finding that state law must require more than a mere offer. And Texas... sort of addressed the idea that Texas also has an attempt statute. And how do you put those two together? It sort of seems redundant if you have an attempt statute, but then you sort of put all of that attempt mens rea into your offer to sell. Substantial step. So then you have an attempted offer to sell, which is a substantial step to make a substantial step. How do we put that together? Putting aside, sort of assuming we can address this on our own. Your Honor, I believe that Lopez, which was a 2003 opinion if I recall from Texas, discussed within it five ways that the substantive statute can be met. And it included it as one of those ways, an offer to sell. And that brings the substantive statute much closer to what this Court considers the guideline definition as including that attempt. And when we look at that breadth of Texas case law, we see that an offer to sell requires those substantial steps. And Ochoa Salgado did analyze the cases that defense counsel cites, Wiltz and Stewart. And Wiltz, which was an unpublished Court of Appeals decision from Texas, glosses over those acts in Stewart that make it the type of offer to sell that this Court in Thomas has recognized is sufficient to meet the guideline definition. Stewart involved the that he had a $100 bag of heroin. He said that that's what it was. He showed it to the officer. And the officer paid him $100. And that demonstrates that sufficient requisite culpability and substantial step that is required for an offer to sell to be sufficient under the guideline definition. And yet, aren't there some Texas cases that just say expressly the opposite, which is that the verbal statement of an offer to sell is sufficient? And I'm not sure how to put all of this together, but is that how you read the cases? That there are some out there that say that expressly? There are unpublished Court of Appeals decisions that do say that, Your Honor. And the one that I can think of standing here now is that Wiltz decision that I briefly discussed earlier. And that glosses takes out one part of the Stewart decision. And if I could just, and I appreciate what you're saying and I understand the Ochoa's assessment of that Wiltz decision. But right or wrong, okay, so whether you agree with that judge in the unpublished opinion or not, the fact of the matter is, someone in Texas got convicted of offer to sell without the substantial step that was sort of shorthanded. Does that matter? Your Honor, I do believe that this Court should and can disregard the holding of Wiltz. But the facts of Wiltz, when you look at the facts of Wiltz, setting aside what the Texas Court of Appeals concludes about them, it involved a doing the negotiating and the price considerations that Ochoa talks about as sufficient to meet that mere offer to sell. Well, doesn't that start to strain the categorical approach analysis to start looking into the specific facts on one of these cases in Texas? I don't believe so, Your Honor. My point here is simply that the analysis in Wiltz should be looking at the facts as to Judge Kelly's point. Someone did not get convicted of mere words. In Wiltz, we had those substantial steps and the requisite culpability. And under Texas law, that is what is required for a conviction. And that is why it's sufficient under the guideline definition. Thank you, Ms. Tubbs. Thank you. Mr. Zuner, you've pretty much exhausted your time, but we'll give you a minute. Thank you. Your Honor, three things. Number one, with respect to Chief Judge Smith, your question regarding the Texas statute that Mr. Campos was convicted of, it is not an incohate offense. That is a that is extremely important. And it goes to Judge Kelly's point that there is an incohate offense in Texas for attempt. And that's the 481-108. And so this is not an incohate offense that Mr. Campos was convicted of. And that's extremely important. With respect to Judge Gratz, your question regarding are we bound by the Eighth Circuit precedent versus the way the Fifth Circuit looks at this, there is no light between the Fifth Circuit and Eighth Circuit as to the way that this issue is reviewed. This circuit, and we know that for a whole host of reasons, not least of which there was no authority provided to this district court about a binding decision governing the disposition of Mr. Campos' career offender argument. And we see it here today, of course, as well. The holding in Maldonado that this court has shows us that, and as this court looked at, the Iowa statute and Nebraska statute that did not have offers to sell, what this court said in that case is this is not Hinkle. But what this court has now is Hinkle, which is on point. And the Ochoa-Segado case doesn't move the needle at all. All it says is we're analyzing a whole different issue, alien removability, and we expressly preserve  Ms. Jansen, we'll fill out your minute as well. Thank you, Your Honor. Thank you, Your Honors. I would just like to respond briefly to a few points that the government made. First, this court very squarely held in Smith and the Wallstrom case cases, both of which are cited in the briefing, that where there's no evidence that a witness was actually threatened, didn't receive word of the communication, didn't actually feel threatened, and there was no effect on the case itself, there is no obstruction. Both of those cases were decided under 3C1.1. And in both of those cases, the court found obstruction was not proved and turned to the question of attempt. I don't think there can be any serious dispute on the record that because this paperwork was never delivered, because the confidential source went straight to the police, that that is the case here. Unsworn oral statements to the police are the least reliable type of hearsay. That's this court's Timmons case. And I would point out that even if the government, even to the extent that we don't challenge that the confidential source said the things that she said, what those things mean in the import of it is still very much subject to a credibility determination, which was simply impossible for the court to make on this record. I see my time has expired. Unless you have further questions, I would rest at this point. Thank you, Ms. Jansen. The court appreciates all counsel's participation and argument this morning. It's been helpful. We will consider it in supplementation to the briefing that's been submitted and we'll take the case under advisement.